*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Z. A. SCOTT, Minor.

UNPUBLISHED
March 12, 2019

No. 345528
Osceola Circuit Court
Family Division
LC No. 13-005064-NA

Before: RIORDAN, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child, ZAS, under MCL 712A.19b(3)(c)[1] and (j).[2] We affirm.

## I. PERTINENT FACTS

ZAS's history of involvement in abuse and neglect cases dates back to 2013, when respondent and ZAS's father approved a placement plan granting ZAS's grandmother a limited guardianship. That guardianship ended in 2014 after the trial court discovered that ZAS had been returned to his parents without court approval. By 2015, a second guardianship with ZAS's grandmother was established. Subsequently, in January 2017, a no-contact order was put into place between ZAS and respondent as a result of ZAS's trauma and behavioral problems caused

---

[1] The record is unclear as to whether the trial court terminated respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) or (*ii*) (other conditions causing the child to come within the court's jurisdiction exist). In any event, respondent-mother does not challenge the trial court's findings with respect to the statutory grounds for termination.

[2] ZAS's father was also a party in the lower court; however, his parental rights were not terminated, and he is not a party to this appeal. Accordingly, the term "respondent" as used in this appeal refers only to respondent-mother.

by respondent's visits and alcohol abuse. Respondent was urged to engage in AA or counseling for her alcoholism before visits could be reinstated.

In May 2017, the Department of Health and Human Services (DHHS) filed a petition requesting ZAS's removal from the home he shared with his grandmother and father after law enforcement officers discovered methamphetamine and methamphetamine paraphernalia in the home. Respondent was identified in the petition, and it was noted that she was at a rehabilitation facility at that time and could not provide proper care and custody for ZAS. The guardianship was ended, and respondent entered a plea of admission acknowledging that she was unable to provide proper care and custody for ZAS. Respondent entered into a parent-agency treatment plan once she was released from the rehabilitation facility.

Soon after, respondent began having supervised visitations with ZAS, but these ended in July 2017 when respondent had a relapse and it became probable that ZAS would have to be placed at a treatment facility as a result of his severe behavioral issues in two different foster care placements. Visitations were suspended until both respondent and ZAS could stabilize. Respondent was unable to maintain sobriety and relapsed numerous times over the course of the case, eventually denying that she needed any professional assistance in dealing with her alcoholism or mental health issues. Respondent was unable to secure stable housing or employment, and DHHS requested termination of her parental rights.

Following a two-day hearing, the trial court terminated respondent's parental rights. This appeal followed.

## I. DUE PROCESS

Respondent first argues that the trial court violated her due-process rights when her supervised visitation was suspended without a finding that the visits were harming the child. We disagree.

To the extent that this issue implicates respondent's due process rights, we review preserved constitutional issues de novo. *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). "It is well established that parents have a significant interest in the companionship, care, custody, and management of their children. This interest has been characterized as an element of 'liberty' to be protected by due process." *In re Brock*, 442 Mich 101, 109; 499 NW2d 752 (1993). "In Michigan, procedures to ensure due process to a parent facing removal of [a] child from the home or termination of . . . parental rights are set forth by statute, court rule, [DHHS] policies and procedures, and various federal laws . . . ." *In re Rood*, 483 Mich at 93. Respondent contends that she was deprived due process when her parenting time was suspended before the trial court determined that continued visitation would be harmful to ZAS, contrary to MCL 712A.18f(3)(e).

This Court has previously addressed a respondent's contention that she was improperly denied mandatory parenting time during the pendency of a child protective proceeding in *In re Laster*, 303 Mich App 485; 845 NW2d 540 (2013). Although the respondent in *Laster* cited different authorities than the statute relied upon by respondent in this case, this Court's analysis of the issue is directly relevant to respondent's claim of error. The *Laster* Court explained that

MCR 3.965(C)(7)(a) and MCL 712A.13a(13) require the trial court "to make findings of harm before suspending parenting time," but only govern suspensions of parenting time between the preliminary hearing and adjudication. *Id*. at 488. Other rules—namely, MCR 3.977(D) and MCL 712A.19b(4)—govern parenting time after a termination petition is filed. *Id*. at 488-489. However, no court rules govern parenting time between adjudication and the filing of a termination petition, and the only statutory provisions that address parenting time during this period are MCL 712A.18f(3)(e) and (f). *Id*. at 489.

Subsection (3)(f) is not relevant to the case at hand and subsection (3)(e) is the very statutory provision upon which respondent bases her due-process argument. Before the trial court enters an order of disposition, the petitioner must prepare a case service plan. MCL 712A.18f(2). Pursuant to MCL 712A.18f(3)(e):

> The case service plan shall provide for placing the child in the most family-like setting available and in as close proximity to the child's parents' home as is consistent with the child's best interests and special needs. The case service plan shall include, but is not limited to, the following:
>
> * * *
>
> (e) Except as otherwise provided in this subdivision, unless parenting time, even if supervised, would be harmful to the child as determined by the court under section 13a of this chapter *or otherwise*, a schedule for regular and frequent parenting time between the child and his or her parent, which shall not be less than once every 7 days. [Emphasis added.]

Considering this statutory provision, the *Laster* Court explained:

> It is clear from the statutory language that these provisions only govern the agency and what parenting time recommendations the case service plan must include following adjudication; they do not govern the trial court's authority to enter orders regarding parenting time following adjudication. In the absence of a court rule or statute, the issue of the amount, if any, and conditions of parenting time following adjudication and before the filing of a petition to terminate parental rights is left to the sound discretion of the trial court and is to be decided in the best interests of the child. No finding of harm is required, although such a finding is usually implicit in the court's decision. Subsection (3)(e) simply directs the agency to include a recommended parenting time schedule in the case service plan, unless (1) the trial court had, before adjudication, determined under [MCL 712A.13a] that parenting time, even if supervised, would be harmful to the child or (2) that the trial court had "otherwise" determined that parenting time, even if supervised, would be harmful to the child. [*In re Laster*, 303 Mich App at 490.]

As was the case in *Laster*, *id*. at 491, respondent was initially given weekly parenting time with ZAS. It was not until after the adjudication, but before DHHS filed the supplemental petition seeking termination of respondent's parental rights, that the trial court ordered parenting time at DHHS's discretion and parenting time was subsequently suspended by DHHS. Thus,

contrary to respondent's argument on appeal, the trial court was under no obligation to make a finding of harm before suspending respondent's parenting time and, instead, had discretion to discontinue parenting time in order to serve ZAS's best interests. *Id*. at 490.

Notably, at the time of the July 10, 2017 hearing, ZAS had recently moved to a new foster care placement as a result of severe behavioral issues and it was anticipated that he would likely have to be relocated to an inpatient treatment facility in the near future. That same day, respondent appeared in court intoxicated and admitted she had been drinking. As ZAS's case manager later explained, respondent's parenting time was suspended upon the recommendation of ZAS's service providers because they were concerned about the effect respondent's relapse would have upon ZAS. Given ZAS's unique needs and respondent's evident continuing struggles with substance abuse, the trial court did not abuse its discretion by permitting DHHS to determine appropriate parenting time as the case developed.

Furthermore, when the issue of resuming visitation was raised by respondent's attorney at a dispositional hearing in January 2018,[3] ZAS's case manager was open to the idea provided that respondent could establish a history of sobriety for more than "a month or two." It was necessary for respondent to maintain sobriety for a significant period of time because it would be extremely detrimental to ZAS's progress if parenting time were to resume, only to be suspended again if respondent failed to abstain from alcohol use. This position was clearly supported by ZAS's trauma assessment, which indicated many of ZAS's challenges were exacerbated by the unreliable familial relations and regular displacement ZAS has continuously experienced from a young age. Even so, the trial court acknowledged that respondent had shown some recent improvement in addressing her substance abuse and directed DHHS to prepare a plan for how and when visitation might be implemented in the future. Although DHHS prepared a visitation plan consistent with the trial court's directive, the supplemental petition seeking termination of respondent's parental rights was filed before visitation was deemed appropriate and in ZAS's best interests. On this record, we hold that the trial court did not err by allowing DHHS to suspend respondent's parenting time, nor did DHHS's handling of this issue deprive respondent of due process.

## II. BEST INTERESTS

Respondent also argues that the trial court erred by determining that termination of her parental rights was in ZAS's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). When considering best

---

[3] On or about July 31, 2017, respondent's attorney requested an emergency hearing to address parenting time because DHHS had suspended respondent's visitation. The hearing was subsequently adjourned at respondent's request. According to the guardian ad litem, the evidentiary hearing concerning respondent's request did not take place because respondent "fell off the wagon then."

interests, the focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90. The trial court should weigh all available evidence in evaluating the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). This Court reviews the trial court's determination of best interests for clear error. *In re Olive/Metts Minors*, 297 Mich App at 40. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

The trial court made detailed factual findings in support of its best-interest determination, considering respondent's bond with ZAS, her parenting ability, ZAS's need for permanency and stability, ZAS's foster care and adoption prospects, and a number of other additional best-interest factors applicable to child custody proceedings. All of these factors were appropriate matters for the trial court to take into account in evaluating whether termination was in ZAS's best interests. See *In re Medina*, 317 Mich App 219, 238-239; 894 NW2d 653 (2016) (permitting consideration of best-interest factors set forth in MCL 722.23); *In re White*, 303 Mich App at 713-714 (concerning child's well-being in care, possibility of adoption, and compliance with case service plan); *In re Olive/Metts Minors*, 297 Mich App at 41-42 (concerning bond, parenting ability, and need for permanence and stability). While respondent takes issue with the trial court's findings with respect to the vast majority of these considerations, her arguments are largely based on a narrow and selective view of the full record.

A more complete review of the record demonstrates that respondent has been in and out of ZAS's life for several years and has caused significant disruptions when present as a result of her substance abuse. Despite frequent warnings about the importance of establishing and maintaining sobriety in order to reunify with ZAS, respondent repeatedly failed to complete various rehabilitation, detoxification, and step-down programs and continued to consume alcohol throughout these proceedings. Respondent maintained that she was able to abstain from alcohol consumption without professional help, but chose not to when she became overwhelmed with emotions and wanted to sleep. These circumstances suggest that reunification with respondent would not be in ZAS's best interests, as respondent is clearly unable or unwilling to prioritize ZAS's needs.

Furthermore, ZAS rarely inquired about respondent and showed increased anxiety when he discussed respondent's previous interactions with him while intoxicated. Respondent was incarcerated at the time of the termination hearing and had no source of income or other means to support herself or ZAS. Her only plan for obtaining income was to reapply for social security disability benefits (having been previously denied) with the assistance of an attorney. Respondent planned to live with a recent acquaintance upon her release from jail, but she had not discussed the possibility of ZAS living there as well. Thus, despite her professed desire to parent ZAS, she took little to no affirmative steps to realize that goal. As the case manager explained, given ZAS's history, the most important thing for ZAS was to ensure that his next placement was in a "permanent home forever." Respondent's demonstrated instability suggests that ZAS would not receive this crucial permanency with respondent. Thus, we have no difficulty holding

that the trial court did not clearly err by determining, by a preponderance of the evidence, that termination of respondent's parental rights was in ZAS's best interests.

Affirmed.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Anica Letica